E-FILED
Monday, 15 June, 2026  09:30:12 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

JORDIN BOMA,

      Plaintiff,

    v.

UPPER CRUST FOOD SERVICES, LLC, and
COLLEGE FRESH, LLC,

      Defendants.

Case No. 2:26-cv-2058-CSB-EIL

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants Upper Crust Food Services, LLC, and College Fresh, LLC ("Defendants"), by the undersigned counsel, Sean G. Rohan and Michael J. Gilger of O'Hagan Meyer LLC, and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves this Court to dismiss Plaintiff Jordin Boma's First Amended Complaint with prejudice and in support thereof states as follows:

1.      On or about April 1, 2026, Plaintiff, Jordin Boma ("Plaintiff") filed her First Amended Complaint. (Doc. 4).

2.      Plaintiff has asserted against Defendants federal and state law claims of retaliation, violations of the Illinois Whistleblower Act, tortious interference with a prospective economic advantage, negligent supervision, and negligent retention, all stemming from her employment relationship with Defendants.

3.      As detailed in the accompanying Memorandum of Law in Support, Plaintiff's claims are factually and legally insufficient and should be dismissed with prejudice.

WHEREFORE, for these reasons and for those set forth in Defendant's Memorandum of Law in Support of its Motion to Dismiss, Defendants Upper Crust Food Services, LLC, and

#12515236v1

College Fresh, LLC, move this Court to dismiss Plaintiff's First Amended Complaint pursuant to

Fed. R. Civ. P. 12(b)(6) and for all other relief this Court deems just and proper.

Dated this 15th day of June, 2026.

Respectfully submitted,


By:    _/s/_ Michael J. Gilger
        One of the Attorneys for Defendants


Sean G. Rohan (ARDC #6310029)
Michael J. Gilger (ARDC #6345777)
O'HAGAN MEYER
1 E. Wacker Dr., Suite 3400
Chicago, IL 60601
Telephone: 312.422.6100
Facsimile: 312.422.6110
srohan@ohaganmeyer.com
mgilger@ohaganmeyer.com


#12515236v1

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

JORDIN BOMA,

      Plaintiff,

    v.

UPPER CRUST FOOD SERVICES, LLC, and
COLLEGE FRESH, LLC,

      Defendants.

Case No. 2:26-cv-2058-CSB-EIL

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO
<u>F.R.C.P. 12(b)(6)</u>**

Defendants Upper Crust Food Services, LLC ("Upper Crust"), and College Fresh, LLC ("College Fresh") (collectively, "Defendants"), by the undersigned counsel, Sean G. Rohan and Michael J. Gilger of O'Hagan Meyer LLC, and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves this Court to dismiss Plaintiff Jordin Boma's Amended Complaint with prejudice and in support thereof states as follows:

<u>**INTRODUCTION**</u>

Jordin Boma ("Plaintiff") filed her First Amended Complaint on or around April 1, 2026 (Doc. 4). Although the Amended Complaint's counts are numbered through Count X, the numbering omits Counts IV and V and skips from Count III to Count VI. The Amended Complaint therefore contains eight counts, not ten. For clarity, this Motion refers to the counts by their numbering as pled in the Amended Complaint.

Arising out of an employment relationship with Defendants, Plaintiff brings claims for retaliation (Counts I-III), Violations of the Illinois Whistleblower Act (Counts VI-VII), Tortious Interference with a Prospective Economic Advantage (Count VIII), Negligent Supervision (Count

1

#12543740v1

IX), and Negligent Retention (Count X). However, Plaintiff has failed to plead facts necessary to plausibly entitle her to relief for on any claims. For these reasons and for those stated below, this Court should grant Defendant's Motion to Dismiss and dismiss Plaintiff's claims with prejudice.

## MATERIAL FACTS AS ALLEGED BY PLAINTIFF

Plaintiff was hired by Defendant College Fresh in August 2023 and served as Human Resources Manager for College Fresh until College Fresh was acquired by Upper Crust on or around January 6, 2025. (Doc. 4, ¶ 9). Importantly, Plaintiff's Amended Complaint never alleges she was employed by Upper Crust. Both College Fresh and Upper Crust are food catering services providing meals to fraternities, sororities, and events at college campuses across the United States. (Doc. 4, ¶¶ 7-8). Plaintiff alleges that when Upper Crust acquired College Fresh in early 2025, Jack Dawson (former owner of College Fresh and President of Upper Crust "subsequently after" the acquisition) made representations to Plaintiff that she would retain her position as Human Resources Manager following the acquisition. (Doc. 4, ¶¶ 11-13).

Following the acquisition, Melanie Meltzer ("Meltzer") became the Senior Director of Human Resources. (Doc. 4, ¶ 14). Notably, Plaintiff does not allege that her title of Human Resources Manager ever changed.

At an "integration conference" held in Indianapolis to facilitate the integration of the two Companies, which Plaintiff attended, Plaintiff alleges that Meltzer made claims regarding management's discretion to terminate, that they misrepresented information provided to the EEOC in the event of a discrimination claim, and that they do not post labor law posters in the workplace. (Doc. 4, ¶¶ 15-17). Plaintiff alleges that she took notes at the conference and reported Meltzer's comments to President Jack Dawson. (Doc. 4, ¶ 21). She also alleges that she declined to participate in the activities that Meltzer spoke about at the conference. (Doc. 4, ¶ 20). After

2

#12543740v1

following up with Jack Dawson, Plaintiff was verbally told by Jack Dawson on January 22, 2025 that she had been separated from her employment. (Doc. 4, ¶ 24). Plaintiff now believes her separation was the result of her declination to participate in the items Meltzer described at the conference. (Doc. 4, ¶ 28).

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the Amended Complaint includes "enough facts to state a claim that is plausible on its face." *Khorrami v. Rolince,* 539 F. 3d 782, 788 (7th Cir. 2008)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, the factual allegations in the Amended Complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. lqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a Amended Complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all of the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada*, NA., 507 F.3d 614, 618 (7th Cir. 2007).  The court reads the Amended Complaint and assesses its plausibility as a whole.  *See Atkins v. City of Chi*., 631 F.3d 823, 832 (7th Cir.  2011).

3

#12543740v1

## ARGUMENT

**I.    Plaintiff's Amended Complaint Fails to Properly Separate Causes of Action between Defendants.**

With the exception of Count VIII, which is specifically directed at Upper Crust, all of Plaintiff's causes of action are posed to both Defendants. Plaintiff's Amended Complaint must separate causes of action or specify which Counts are against which Defendants. This distinction is important to Plaintiff's claims because the duties, control, and rights of Defendants differ. For instance, Plaintiff alleges Negligent Supervision and Negligent Retention against both Defendants for the actions of Meltzer. (Doc. 4, Counts IX-X). However, Meltzer was only an employee of Upper Crust and was never alleged to be an employee of College Fresh prior to Upper Crust's acquisition on January 6, 2025. (Doc. 4, ¶¶ 9, 14). Regardless of whether she was an employee of College Fresh prior to the acquisition or not, Meltzer was certainly acting in her capacity as Senior Director of Human Resources of Upper Crust when the alleged comments at the integration conference took place. (Doc. 4, ¶¶ 15-17).

The failure to separate causes of action or specify which Counts are directed against which Defendants is further complicated by the fact Plaintiff never alleges she was an employee of Upper Crust. Indeed, her Amended Complaint only alleges she was an employee of College Fresh until January 6, 2025 when College Fresh was acquired by Upper Crust. (Doc. 4, ¶ 9). This failure is further discussed below as it creates inconsistencies, contradictions, and other irreconcilable complications as to the individual causes of action. As pled Plaintiff's Amended Complaint should be dismissed. It does not adequately place Defendants on notice of which claims for relief are directed against which Defendant as is required under Feder Rule of Civil Procedure 8(a).

4

#12543740v1

**II.    Plaintiff's Retaliation Claims in Counts I-III Should be Dismissed.**

Counts I through III of Plaintiff's Amended Complaint should be dismissed for the additional basis that they fail to state a claim for retaliation under Title VII, the Illinois Human Rights Act ("IHRA"), or any other recognized common law retaliatory discharge. To state a claim for retaliation under Title VII, an employee must allege that: (1) they engaged in a protected activity; (2) they suffered an adverse employment action; and (3) there is a causal link between their protected activity and the adverse action. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). This is mirrored by the requirements under the IHRA and Illinois common law. *See Maye v. Illinois Human Rights Comm'n,* 224 Ill. App. 3d 353, 360 (1st Dist. 1991) (to state a claim for retaliation, a plaintiff must show that "(1) he engaged in a protected activity; (2) the employer committed an adverse act against him; and (3) a causal nexus existed between the protected activity and the adverse act.").

Count I fails to state a claim for retaliation under Title VII because Plaintiff was not allegedly terminated due to her race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. Plaintiff cites a violation of Title VII as it relates to individuals' rights to make charges, testify, or assist in enforcement proceedings involving Title VII claims. (Doc. 4, ¶¶ 30-32). However, Meltzer's allegedly violative conduct at the January 13, 2025 conference does not implicate Plaintiff's filing of an EEOC charge, or even her participation in the handling of an EEOC matter in the course of her employment duties. In short, Plaintiff fails to allege a violation based on race, color, religion, sex, or national origin.

Plaintiff alleges in Count II that she is a member of a protected class because she is female. (Doc. 4, ¶ 39). However, none of the alleged statements Meltzer made at the conference relate to her sex, or a classification protected by the IHRA as set out in 775 ILCS 5/6-101(A). (Doc. 4, ¶

5

42). The Amended Complaint fails to adequately allege how allegedly hearing a human resources manager talk about unspecified cases of employee terminations, EEOC charges, and the displaying of posters has a relation to Plaintiff's membership in a protected class as a female.

Count III's state law retaliatory discharge claim fails for the same reason. Plaintiff has not alleged engagement in a protected activity. The alleged comments by Meltzer do not amount to a violation of the law in and of themselves. Plaintiff does not allege personal knowledge or provide the specifics of any alleged violation Meltzer apparently stated.

Plaintiff's alleged employment status is also an issue. Plaintiff's Amended Complaint fails to allege that she even integrated into Upper Crust or that a causal nexus existed between her alleged protected activities and her separation. The Amended Complaint describes her employment with College Fresh as lasting between August 2023 and January 9, 2025, Plaintiff never alleges she was an employee of Upper Crust. (Doc. 4, ¶ 9). As such, Plaintiff's claims against Upper Crust remain unclear absent allegations of the beginning of an employment relationship. Plaintiff's Amended Complaint is contradictory insofar as she alleges she ceased employment on January 6, 2025, but alleges her employment had ended on January 23, 2025. (Doc. 4, ¶¶ 9, 26).

Regardless, throughout the Amended Complaint Plaintiff only alleges in a conclusory manner that a "causal connection" exists between her activity and the alleged adverse action. (Doc. 4, ¶¶ 36, 48)[1]. As noted, Plaintiff has not sufficiently alleged discrimination based on being a female or that she engaged in protected activity by talking to Jack Dawson. The integration conference described in the Amended Complaint happened on January 13th, and Plaintiff received notice of her separation roughly a week later. Plaintiff's Amended Complaint never alleges she even began employment at Upper Crust after the acquisition. It's equally likely that non-retaliatory

---

[1] Count III does not even contain a conclusory allegation of a causal nexus.

6

#12543740v1

staffing decisions were made before the full integration of the two companies and Plaintiff never actually began her employment with Upper Crust.

Plaintiff seemingly relies upon the temporal proximity of her emails to Jack Dawson and her separation to conclude that her engagement in those activities was the cause of her termination. However, "the general rule is that temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter without additional facts." *Lanlan Li v. Fresenius Kabi USA, LLC* 110 F.4th, 988, 998 (7th Cir. 2024). Here, the omission of allegations between the acquisition, integration, and the beginning of a new employment relationship, are fatal to Plaintiff's retaliation claims. As such, Plaintiff has failed to state a claim upon which relief can be granted and Counts I, II, and III should be dismissed.

### III.    Counts VI and VII For Violations of the Illinois Whistleblower Act Should be Dismissed.

Plaintiff has alleged that she was retaliated against in violation of the Illinois Whistleblower Act ("IWA") for (1) disclosing Meltzer's comments to Jack Dawson and (2) refusing to participate in the alleged illegal employment practices. (Doc. 4, ¶¶ 65, 74).Protected activities under the IWA include: (1) disclosing or threatening to disclose to a government agency conduct that violates state or federal law; (2) refusal to participate in any activity the employee reasonably believes violates state or federal law; and (3) disclosing or threatening to disclose public corruption. 740 ILCS 5/174 *et seq.*

Count VI must be dismissed because disclosing Meltzer's comments to Jack Dawson is not a recognized protected activity under the IWA since this disclosure was not made to a governmental agency or public body under Section 15 of the IWA. 740ILCS 174/15.  Further, there are no allegations that Plaintiff *threatened* to disclose Meltzer's comments to any governmental agency.

7

#12543740v1

As such, for failure to state a recognized protected activity under the IWA, Count VI should be dismissed out of hand.

Plaintiff, in Count VII, attempts to categorize her voiced intent to not implement Meltzer's comments into practice as a refusal to participate in an illegal activity. (Doc. 4, ¶¶ 22 75). This is insufficient to support a claim under Section 20 of the IWA. The allegations fail to describe what alleged illegal or improper activity Plaintiff was asked to perform. "'Refusing to participate' means exactly what it says: a plaintiff who participates in an activity that would result in a violation of a state or federal law, rule, or regulation cannot claim recourse under the [IWA]. Instead, the plaintiff must actually refuse to participate." *Sardiga v. Northern Trust Co.,* 409 Ill. App. 3d 56, 62 (1st Dist. 2011). The *Sardiga* Court explained that Black's Law Dictionary defines "refusal" as "[t]he denial or rejection of something offered or demanded." *Id.* Here, there was nothing offered or demanded.

Meltzer's comments described in the Amended Complaint were described as: (a) operations personnel have discretion to terminate; (b) how management handles EEOC claims; (c) the posting of labor law posters in their workplaces. (Doc. 4, ¶ 17). Plaintiff then alleges she was "requested to implement the employment practices described during the conference." (Doc. 4, ¶ 19). First, it is unclear whether the three comments described in the Amended Complaint were actually what Meltzer was requesting from Plaintiff. For instance, if Meltzer said that operations personnel have discretion to terminate, that "policy" would not even apply to Plaintiff as Human Resources Manager. To the extent that the request included "participating in the preparation or alteration of documentation relating to employee terminations in HR compliance matters" as stated in paragraph 73, this allegation is too vague. Plaintiff does not state that there was a specific incident or employee file she was allegedly asked to alter. Asking that she "prepare" documentation related to terminations is not a violation of any stated law.

8

Finally, it cannot be understated that Plaintiff's failure to establish an employment relationship with Upper Crust remains fatal to her claims. Plaintiff never alleges that she, in her capacity as Human Resources Manager *of Upper Crust*, refused a directive from her superior to violate state or federal law. Plaintiff never alleges she integrated into the new company and made these refusals. For similar reasons, Plaintiff cannot establish a causal nexus between a definite, illegal action Upper Crust wanted to take, her refusal to participate in it, and her separation. For these reasons, Plaintiff has failed to state a plausible claim for relief for a violation of the IWA and Counts VI and VII should be dismissed.

## IV.   Count VIII Against Upper Crust for Tortious Interference with Prospective Economic Advantage Should be Dismissed.

It is generally recognized by Illinois Courts that in order to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. Geneva,* 142 Ill. 2d 495, 511 (1991). The *Fellhauer* Court explicitly recognized that interference with prospective economic advantage in an employment relationship has never explicitly set forth the elements of that cause of action. *Id.* (citing *Mittelman v. Witous,* 135 Ill. 2d 220, 251 (1989)). Additionally, "Illinois courts have held that a corporate employer cannot interfere with its own business relationship with its employees." *Vickers v. Abbott Labs*, 308 Ill. App. 3d 393, 397 (1st Dist. 1999).

The allegations in Count VIII offer more insight into the many contradictions contained in the Amended Complaint. First, Plaintiff offers two different "reasonable expectancies" – continued employment as well as career advancement. (Doc. 4, ¶¶ 81-82).

9

Plaintiff was an at-will employee with College Fresh, as she has not alleged any employment agreement to the contrary.[2] As such, under her current employment structure, termination for an unspecified non-discriminatory and non-retaliatory reasons is permitted. *See Hogge v. Champion Laboratories, Inc.,* 190 Ill. App 3d 620, 628 (5th Dist. 1989) ("The rule in Illinois is that an employment relationship at will can be terminated for a good reason, a bad reason, or no reason at all."). The Illinois Supreme Court observed that if "the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *Fellhauer,* 142 Ill. 2d at 512. As such, when College Fresh was acquired by Upper Crust and effectively ceased to exist, Plaintiff could not have had any reasonable expectation of continued employment given her at-will status.

However, Plaintiff frames Count VIII as directed to Upper Crust. Plaintiff bases her claims upon certain representations made by Jack Dawson. The Amended Complaint is silent, however, on whether Jack Dawson was acting in his capacity as President of Upper Crust when these representations were made – such that relying on them would be reasonable. Plaintiff only alleges that Jack Dawson "subsequently" became President of Upper Crust after the acquisition. (Doc. 4, ¶ 11). The acquisition is alleged to have occurred on January 6, 2025, and the representations were made on January 7, 2025. (Doc. 4, ¶¶ 9, 12). As such, it remains unclear from the face of the Amended Complaint whether relying on such representations would have been reasonable, given her at-will status with College Fresh, her lack of employment at Upper Crust, and Jack Dawson's unclear role at that time.

---

[2] "Where an employee is hired for an unspecified period of time, a presumption arises that the employee's status is that of an employee at will; that presumption, however, can be rebutted by a showing that the parties contracted otherwise." *Hogge v. Champion Laboratories, Inc.,* 190 Ill. App. 3d 620, 628 (5th Dist. 1989).

10

#12543740v1

Regardless, Plaintiff must allege that Upper Crust interfered with a third party to sustain her claim for tortious interference with economic advantage. Neither Upper Crust nor College Fresh are alleged to have acted to influence a third party to Plaintiff's business detriment. The tort "requires a showing of action by the defendant toward a third party" and none is present here. *Vickers*, 308 Ill. App. 3d at 411.

Finally, Plaintiff fails to demonstrate an actionable, reasonable expectancy, rather than a conclusion, that she had a "reasonable expectancy of career advancement in the human resources profession, including potential advancement within the combined Upper Crust/College Fresh organization." (Doc. 4, ¶ 82). The Amended Complaint does not show that Plaintiff was under consideration for a promotion when the integration happened. Illinois case law on tortious interference with business expectancies has addressed cases involving promotions. In that context the plaintiff must allege that "the defendant acted intentionally with the purpose of injuring the plaintiff's expectancy." *Younge v. Berman*, 2025 IL App (2d) 240354, *20. The *Younge* court analyzed the expectancy of the promotion as distinct from the expectancy for continued employment. *Id.* Here, no facts show that Plaintiff was in line for a promotion or any further specific career advancement. Upper Crust is not alleged to have known of any such anticipated developments and intentionally thwarted them.

As such, for failing to plausibly allege the first element of her tortious interference with prospective economic advantage claim, and for failing to allege interference with a third party, and for failing to allege an expectancy in a promotion, Count VIII should be dismissed.

## V.    Count IX for Negligent Supervision Must be Dismissed.

Under Illinois law, to succeed on a cause of action for negligent supervision, the plaintiff must establish that (1) the employer had a duty to supervise its employee; (2) the employer

11

breached that duty and negligently supervised its employee; and (3) such negligence proximately caused the plaintiff's injuries. *Lansing v. Southwest Airlines Co.,* 2012 IL App (1st) 101164, ¶ 22. Plaintiff claims that Meltzer's comments at the integration conference constituted negligent supervision and that negligence proximately caused her separation. (Doc. 4, ¶¶ 88-92).

As a threshold matter, College Fresh did not have a duty to supervise Meltzer because Meltzer was not an employee of College Fresh, and Plaintiff makes no allegation that she was. College Fresh, as a recently acquired entity, possessed no control over the hiring or management of Meltzer. The existence of an employer-employee relationship is implicit in the duty to supervise. *See Lansing,* 2012 IL App (1st) 101164 ¶ 22; *Platson v. NSM, Am., Inc.,* 322 Ill. App. 3d 138, 144. As such, Count IX should be dismissed on this basis alone as it pertains to College Fresh.

As to Upper Crust, Plaintiff has failed to properly plead proximate cause. Plaintiff has merely concluded that it was foreseeable that Meltzer's comments would result in Plaintiff's termination, without alleging any facts to support that proposition. (Doc. 4, ¶ 91). The term "proximate cause" describes two distinct requirements: cause in fact and legal cause, "which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Lee v. Chicago Transit Authority,* 152 Ill. 2d 432, 455 (1992). Cause in fact is established when there is a reasonable certainty that a defendant's acts caused the injury or damage. *Id.* Legal cause is a question of foreseeability, in which a reasonable man would see as a likely result of his conduct. *Id.* at 456. Here, Plaintiffs' allegations do not establish either cause in fact or legal cause. It is clear from the Amended Complaint that Jack Dawson's separation notice was the cause in fact of Plaintiff's alleged injuries. (Doc. 4, ¶ 24). As for legal cause, "an injury will be found <u>not</u> to be within the scope of the defendant's duty if it appears 'highly extraordinary' that the breach of duty should have caused the particular injury."

12

*Lee,* 152 Ill. 2d at 456 (emphasis added). Here, it would be highly extraordinary that an employee's allegedly indecorous comments at an integration conference would result in Plaintiff receiving a separation letter. In simpler terms, Plaintiff's Amended Complaint does not connect the dots between A to B.

Accordingly, Count IX of Plaintiff's Amended Complaint must be dismissed.

## VI.   Count X for Negligent Retention Should be Dismissed.

Plaintiff's claims in Count X for Negligent Retention are parallel to her allegations in Count IX for Negligent Supervision. The case law regarding the two are similar as well. In an action for negligent retention, a plaintiff must plead and prove "(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's [] retention; and (3) that this particular unfitness proximately caused the plaintiff's injuries." *Doe v. Catholic Bishop of Chi.,* 2017 IL App (1st) 162388, ¶ 11. In this context, the particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position. *Id.*

As emphasized immediately above, College Fresh was never alleged to have hired, employed, or had any decision-making duties in retaining Meltzer. As such, Count X must fail as to College Fresh for the same reasons as Count IX.

As to Upper Crust, Plaintiff again fails to properly plead proximate cause. Plaintiff's alleged injury is her separation, not hearing the comments at the integration conference. As such, it is unclear from the Amended Complaint how the retention of Meltzer resulted in her termination. As supported by the case law cited in Section V, *supra*, it is perplexing how Meltzer's retention after Plaintiff's separation was the proximate cause of her injury. *Lee,* 152 Ill. 2d at 456.

13

#12543740v1

Plaintiff similarly does not adequately plead that Upper Crust knew or should have known about Meltzer's alleged unfitness for her post. Plaintiff does not allege, for example, that she is aware of any specific situation where Meltzer or Upper Crust falsified an employment record furnished to a government agency, failed to post necessary signage, or violated any law in its decisions to terminate employees. Instead, the Amended Complaint treats Melzer's alleged statements as substitutes for the alleged violations themselves. For failing to adequately plead legal proximate cause and that Upper Crust knew or should have known of any inappropriate behavior by Meltzer in her negligent retention claims, Count X of Plaintiff's Amended Complaint should be dismissed.

## CONCLUSION

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. Notwithstanding the legal deficiencies outlined throughout this Motion, Plaintiff's Amended Complaint mis-numbers Counts and does not specify which causes of action are against which Defendants.

As to the individual causes of action, Plaintiff has failed to allege facts sufficient to state a plausible claim for relief. As such, Plaintiff's Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

WHEREFORE, Defendants Upper Crust Food Services, LLC and College Fresh, LLC, respectfully request that this Honorable Court grant its Motion and dismiss Plaintiff's Amended Complaint against Defendant with prejudice, and for any other relief this Court deems just and proper.

14

#12543740v1

Dated this ___ day of June, 2026.

Respectfully submitted,

By:     __/s/ Michael J. Gilger_____
One of the Attorneys for Defendants

Sean G. Rohan (ARDC #6310029)
Michael J. Gilger (ARDC #6345777)
O'HAGAN MEYER
1 E. Wacker Dr., Suite 3400
Chicago, IL 60601
Telephone: 312.422.6100
Facsimile: 312.422.6110
srohan@ohaganmeyer.com
mgilger@ohaganmeyer.com

15

#12543740v1